**Gordon BROWN; Trudy Brown, H/W, Appellants,**

v.

**OLD CASTLE PRECAST EAST, INC.; Rotondo Precast; Rotondo Precast Modular Group; Crown Trucking Company; Crown Truck Leasing, Inc.; Landstar Ligon, Inc.**

No. 02–4016.

United States Court of Appeals, Third Circuit.

Argued July 15, 2003.

Decided Aug. 6, 2003.

Vincent F. Presto (Argued), Philadelphia, PA, John J. Brannigan, Philadelphia, PA, for Appellants.

Stephen D. Menard (Argued), David F. White, Kelly, McLaughlin, Foster, Bracaglia, Daly, Trabucco & White, Philadelphia, PA, for Appellees Old Castle Precast, Rotondo Precast, and Rotondo Precast Modular Group.

Robert P. Corbin (Argued), German, Gallagher & Murtagh, Philadelphia, PA, for Appellee Landstar Ligon, Inc.

Before McKEE, BARRY and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal addresses the correctness of the District Court's jury instructions and several evidentiary rulings in a diversity tort suit for damages resulting from an industrial accident. We hold that the District Court did not abuse its discretion on its evidentiary rulings. Although the District Court's jury instructions were confusing, the Plaintiffs failed to properly object to them at the time the jury was charged. Under these circumstances, we affirm the judgment.

## I.

Gordon Brown ("Brown") alleged that he was injured when an angle iron, a metal device that was used to secure a concrete structure onto a trailer during shipment to Brown's employer, fell from the trailer and hit him on the head moments after he had completed an inspection of the concrete and had jumped from the trailer. Defendants in this matter were Brown's employer and the shipping company. Brown alleged serious head injuries; Defendants argued that the injuries were not as serious as claimed and that, because Brown was wearing a hard hat at the time of the injury, the serious harms alleged by Brown could not be attributed to the angle iron occurrence. Brown claimed he was not wearing a hard hat when the angle iron struck him because it had fallen off when he jumped from the trailer.

The extent of Brown's injuries and whether the accident caused those injuries were the main contested issues at trial. The parties had agreed that the issue of negligence would not be submitted to the jury. The jury was only asked to determine the amount of damages that were proximately caused by the accident. During deliberations, the jury inquired whether "accident," as used in its instructions, meant "negligence" or "fault." The District Court responded in the negative. Plaintiffs argue that this was error because it suggested that negligence was still an issue for the jury, when it had actually been conceded. The District Court also declined Plaintiffs' request to instruct the jury on damages stemming from lost projected yearly productivity increases in wages of the male plaintiff. During the trial, the District Court exercised its discretion in disallowing some of Plaintiffs' evidence. The jury returned a verdict awarding $100,000 in damages to Plaintiffs. Plaintiffs complain in this appeal that the District Court committed prejudicial error in making its evidentiary rulings and in instructing the jury. They request that the judgment be vacated and the matter remanded for a new trial.[1]

---

1. Plaintiffs motion to the District Court for a     new trial alleging these errors was denied.

## II.

We exercise plenary review in determining whether a jury instruction misstates a legal standard. *Savarese v. Agriss,* 883 F.2d 1194, 1202 (3d Cir.1989). We consider whether the jury instructions fairly and adequately convey the law applicable to the case. *See Douglas v. Owens,* 50 F.3d 1226, 1233 (3d Cir.1995). An allegedly erroneous jury instruction that is not preserved through a proper objection is subject to plain error analysis. *Alexander v. Riga,* 208 F.3d 419, 426 (3d Cir.2000).[2]

## A.

The District Court stated to the parties at the jury instructions conference: "[M]y understanding [is] there's not going to be an issue of negligence submitted to the jury[.]" Counsel for one of the Defendants replied, "That is correct." No one at the conference disputed that the issue of negligence had been taken away from the jury. At a later point in the jury instructions conference, counsel for one of the Defendants noted, "And we have sort of taken [negligence] out of the province of the jury."

Accordingly, the District Court's instructions to the jury were essentially as follows: "The defendants here are admitting that an accident occurred on August 18, 1998.... What is in dispute is, number one, how the accident occurred, and number two, the extent of the injuries suffered by the plaintiff as a result of this occurrence, and number three, the extent of the damages, if any, suffered by the plaintiff as a result of the accident." The District Court stated that the Plaintiffs had to "prove that the accident ... was the proximate cause of the injuries sustained." No instructions were given on

the elements of duty and breach. The verdict sheet asked a single question: "What damages, if any, did the Plaintiffs ... suffer as a result of the August 18, 1998 accident?" Thus, as Defendants themselves observed in their brief, the only issues before the jury were "the issues of proximate cause, as well as the nature and extent of ... Brown's injuries."

Later, during jury deliberations, the jury asked the Court whether the word "accident" in the instructions signified "fault" or "negligence." Counsel for Defendants vehemently argued to the Court that negligence had not been conceded, and that the District Court should instruct the jury that negligence was a matter for its consideration. The District Court responded that

> negligence has never been conceded.... They are not ... disputing that an accident occurred; they are disputing how the accident occurred. If the jury finds that the accident occurred from something that defendants did or didn't do, then they will find fault. If they find that it was an unfortunate occurrence, then there is no fault. And there is no negligence. So you can have an accident and they can agree that the accident occurred or the incident occurred or that there was an occurrence without finding negligence or fault.

This statement is flatly inconsistent with the agreement of the parties that negligence was not before the jury. Therefore, the District Court premised its reply to the jury on a flawed understanding of the agreement of the parties.

Defendants assert in their brief that, even if premised on a flawed understanding of the parties' agreement, the Court's reply was nonetheless appropriate because

**2.** The District Court possessed diversity jurisdiction pursuant to 28 U.S.C. § 1332. Appellate jurisdiction over the District Court's final order is proper under 28 U.S.C. § 1291.

"the jury's question was answered 'no,' indicating to the jury that negligence or fault was not part of the question before them." To the contrary, the jury's question suggests that it was confused as to whether negligence was implicitly conceded by the use of the word "accident" in its instructions; the District Court's "no" answer might have indicated that negligence was not conceded.[3]

The Court's response here did little to alleviate the potential confusion on the part of the jury. The District Court should have taken greater lengths to assure the jury that it was only to consider whether the accident was the proximate cause of Brown's injuries and the extent of damages. It could have done so without directly stating that Defendants were negligent, thereby preserving the agreed-upon fiction that negligence was not conceded.

■ Significantly however, the Plaintiffs failed to object to the faulty jury instructions at the appropriate time.

[A] party who has not challenged the trial court's jury instructions at an appropriate time is deemed to have waived such a challenge. We have emphasized the need to raise any objections to jury instructions prior to the time the jury begins its deliberations: Under Fed. R.Civ.P. 51, a party, in order to preserve an objection either to a failure to instruct the jury on an issue or to the manner in which the jury was instructed, clearly must object thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.

*Alexander*, 208 F.3d at 426. Failure to timely object means that the alleged error is subject to plain error analysis. *Id.*

Here, the genesis of the jury's confusion was the Court's initial jury charge, which laid out the causation and damages elements of Plaintiffs' tort claim, but made no reference to negligence. It was readily foreseeable at the charging stage that the jury might become confused by an instruction that so starkly departed from the conventional understanding of the components of tort liability. Therefore the appropriate time to object was when the initial charge was given, and the failure to do so means that plain error analysis applies.

■ The District Court's answer to the jury's question, however, cannot be deemed "fundamental and highly prejudicial," the required showing for plain error, *id.*, given that the remainder of the jury's instructions were entirely clear as to the only issues for the jury's consideration, and thus Plaintiffs were ultimately awarded $100,000 in damages. We might speculate that a proper reply to the jury's question would have increased or decreased the damages award; however, under the plain error standard of review, we cannot conclude that this was a "highly prejudicial" error. Therefore, we must affirm.

### B.

Witness David Bunin, an economist, testified without objection that Brown's total loss of earnings from the accident was $443,097 if he would have worked until age 65 and $721,563 if he would have worked until age 70, *including* projected upward adjustments for productivity increases. Plaintiffs object that the District Court failed to instruct the jury that productivity increases were a factor to consider in assessing damages. The District Court clearly believed that productivity increases

---

**3.** We acknowledge that this one-word reply could have several different interpretations for the jury, and might have suggested, as Defendants contend, that negligence was not an issue for its consideration.

were valid considerations for the jury's damages award, because it permitted Plaintiffs to argue projected productivity increases in closing.

■ However, even though future productivity increases may have been valid considerations for the jury, the District Court's failure to instruct thereon is not reversible error. "We review jury instructions to determine whether, if taken as a whole, they properly apprised the jury of the issues and the applicable law." *Tigg Corp. v. Dow Corning Corp.,* 962 F.2d 1119, 1123 (3d Cir.1992). Here, Bunin stated lost earnings as a single figure, incorporating projected increases in productivity. The District Court, in its jury instructions, told the jury that it was to consider "future lost earnings and earning capacity" in fixing damages. Moreover, Plaintiffs argued lost productivity in their summation to the jury. Taken as a whole, the failure to instruct specifically on productivity increases is not reversible error

### III.

We review the District Court's evidentiary rulings for abuse of discretion. *Stecyk v. Bell Helicopter Textron, Inc.,* 295 F.3d 408, 412 (3d Cir.2002).

### A.

■ Plaintiffs argue that their witness Dr. Robert Nobilini was improperly precluded from testifying regarding a specific type of brain damage, known as diffuse axonal injury, resulting from a severe impact. Nobilini was admitted as an expert for the limited purpose of testifying to, as Nobilini himself put it, the "forces that can create mechanical damage within the tissue which is related to the medical causation." When questioned regarding his qualifications as an expert witness, Nobilini expressly stated, "On medical causation,

I'm not going to testify." He only professed qualifications to testify regarding the likely force of the impact of the angle iron on Brown's skull. The medical injuries resulting therefrom were outside the province of his expert testimony inasmuch as he did not claim expertise in this area. Therefore, the District Court did not abuse its discretion in excluding his testimony.

### B.

Plaintiffs next argue that they were improperly precluded from presenting the testimony of Brown's co-worker Walter Kusek regarding the uncertainty of Brown's future with his employer, and that Brown was a likely candidate for lay off. Although these items might be relevant to damages, the record actually shows that Kusek's testimony was limited only insofar as he could not testify regarding the worsening of Brown's medical condition, because the Defendants had not received notification prior to trial that this would be part of Kusek's testimony. Plaintiffs have not appealed the exclusion of this element of Kusek's testimony, and there is no evidence they were prevented from offering testimony on future employment prospects. Hence there was no abuse of discretion in excluding this testimony.

### C.

■ Plaintiffs sought to admit videotaped deposition testimony of neurosurgeon Dr. Jim Brasfield, in which he discussed a videotape illustrating Brown's brain injury, and to admit the brain injury videotape into evidence. The District Court ruled that it would be too confusing for the jurors to cross-reference the brain injury videotape and the recorded deposition testimony of Brasfield explaining the brain injury videotape. Given that there is no evidence Brasfield was precluded from verbally describing Brown's injury without

reliance on the video, and given that jury confusion was not an unreasonable concern, the District Court did not abuse its discretion in excluding the videotape and Brasfield's testimony related to it. *Cf. Goodwin v. MTD Products, Inc.*, 232 F.3d 600, 608 (7ᵗʰ Cir.2000) (where there was already testimony describing the events on the video, "[a] video tape [showing a product testing in a product liability case] would have been entirely cumulative, a distraction and a waste of time").

### D.

■ The District Court also excluded the portion of Harold Messenger's videotaped deposition testimony in which Messenger, an observer of the accident, surmised that the iron struck the back of Brown's head and caused his injury based on seeing the iron on the ground near Brown. "[*S* ]*eldom* will be the case when a lay opinion on an ultimate issue will meet the test of being helpful to the trier of fact since *the jury's opinion is as good as the witness'.*" *Hester v. BIC Corp.*, 225 F.3d 178, 184 (2d Cir.2000) (citation omitted) (emphasis in original). The nature of the impact of the angle iron was disputed and . was a key question put to the jury. Therefore the District Court did not abuse its discretion when it barred the admission of the witness's lay inference on this issue.

### E.

Plaintiffs assert that the testimony of Michael Broadway regarding a change in Brown's speech patterns was improperly excluded. However, the District Court asserted that the testimony was cumulative, and the record shows that other preceding witnesses had already rendered before-and-after accounts of their experiences with Brown. The District Court did not abuse its discretion in excluding the testimony.

### F.

■ The District Court forbade the use of a visual aide by Plaintiffs during closing argument depicting a checklist itemizing the various forms of damages the jury could consider (e.g., past pain and suffering, future pain and suffering, past mental anguish, etc.) in reaching its total damages award. The District Court did not abuse its discretion when it held that the blown-up chart of the different forms of damages would have placed undue weight and over-emphasis on the Plaintiffs' claim of damages, a key disputed issue. Moreover, Plaintiffs were not harmed by this ruling because they were allowed to verbally argue the relevant various factors for the jury to consider.

### IV.

Because the District Court did abuse its discretion in its evidentiary rulings, and because the jury instructions did not rise to the level of plain error, we affirm the judgment of the District Court.[4] Each side to bear its own costs.

---

**4.** We also see no legal basis to Plaintiffs' claim that the verdict was inadequate or against the weight of the evidence. The degree of Brown's injuries and especially the extent to which these injuries were caused by Defendants were contested issues at trial that were submitted to the jury.